**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| James Beyer, Collin Smothers, Mateen Zafer, Corey Davis, and Dashawn Bell individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>  v.<br><br>DraftKings, Inc., Crown IL Gaming LLC d/b/a DraftKings, Casino Queen Inc., and Northside Crown Gaming LLC,<br><br>    Defendants. | Case No.: 1:25-cv-01336<br><br>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT** |

**<u>TABLE OF CONTENTS</u>**

**Page**

INTRODUCTION..................................................................................................... 1

FACTUAL ALLEGATIONS..................................................................................... 1

LEGAL STANDARD ............................................................................................... 3

ARGUMENT............................................................................................................ 4

I.       COUNTS 1 THROUGH 8 (PLAINTIFFS' FRAUD-BASED CLAIMS) FAIL TO SATISFY RULE 9(B)'S HEIGHTENED STANDARD..................... 4

II.     THE COURT SHOULD DISMISS THE ICFA CLAIMS. ................................. 5

       A.     DraftKings' Promotional Advertising Was Not Deceptive...................... 6

       B.     DraftKings' Promotional Advertising Was Not Unfair. ......................... 8

              1.     DraftKings' Lawful Conduct Does Not Offend Public Policy............................................................................................. 8

              2.     Beyer has not alleged immoral, oppressive, or unscrupulous acts. ....................................................................................... 10

              3.     Beyer does not allege substantial injury to consumers............... 11

       C.     Plaintiffs Have Not Pled Actual Damage Concerning The Promotions........................................................................................... 11

       D.     Smothers' New Customer Promotion Claim Is Time Barred................. 13

III.    THE COURT SHOULD DISMISS THE NON-ICFA FRAUD CLAIMS.......... 13

       A.     The Court Should Dismiss The Claims For Intentional Misrepresentation and Fraudulent Inducement (Counts 4, 5 & 6).......... 13

       B.     The Court Should Dismiss The Claims For Unjust Enrichment (Count 7)............................................................................................. 14

IV.    THE COURT SHOULD DISMISS PLAINTIFFS' CIVIL CONSPIRACY CLAIM.................................................................................................... 15

V.     THE COURT SHOULD DISMISS THE PRODUCTS LIABILITY CLAIMS................................................................................................... 15

       A.     The DraftKings App Is Not Covered By Products Liability Law............ 16

              1.     DraftKings' Intangible Services Are Not A "Product" Under Illinois Products Liability Law......................................... 16

              2.     DraftKings Sportsbook is Not "Unreasonably Dangerous."........ 18

              3.     Plaintiffs Did Not Suffer Physical Harm..................................... 19

       B.     Plaintiffs' Strict Liability Claims Fail Because Unfixed And Changeable Digital Services Like DraftKings' Platform Are Not Products. ............................................................................................. 19

C.      Plaintiffs' Negligent Products Liability Claims Fail. ............................ 20

     1.      Plaintiffs Incorrectly Point To DraftKings' Business Operations, Not Products, As Defective.................................... 20

     2.      Plaintiffs Fail to Plausibly Allege DraftKings Owed Them a Duty.................................................................................... 21

CONCLUSION.................................................................................................... 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ABN AMRO, Inc. v. Cap. Int'l Ltd.*,
    595 F. Supp. 2d 805 (N.D. Ill. 2008) ................................................................. 4

*Angelilli v. Activision Blizzard, Inc.*,
    No. 23-CV016566, 2025 WL 1184247 (N.D. Ill. Apr. 23, 2025) ...................... 21

*Antar v. BetMGM, LLC*,
    No. 24-1364, 2025 WL 1219316 (3d Cir. Apr. 28, 2025) ........................... 18, 22

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...................................................................................... 3, 4

*Ass'n Benefit Servs. Inc. v. Caremark RX, Inc.*,
    493 F.3d 841 (7th Cir. 2007) ............................................................................ 14

*Baley v. Fed. Signal Corp.*,
    2012 IL App (1st) 093312 ................................................................................. 19

*Batson v. Live Nation Ent., Inc.*,
    746 F.3d 827 (7th Cir. 2014) .............................................................................. 8

*Beaton v. SpeedyPC Software*,
    666 F. Supp. 3d 724 (N.D. Ill. 2023) ................................................................ 17

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ........................................................................................... 3

*Benson v. Fannie May Confections Brands, Inc.*,
    944 F.3d 639 (7th Cir. 2019) .............................................................................. 5

*In re Beyond Meat, Inc., Protein Content Mktg. & Sales Pracs. Litig.*,
    718 F. Supp. 3d 800 (N.D. Ill. 2024) ................................................................ 13

*Blue v. Env't Eng'g, Inc.*,
    828 N.E.2d 1128 (Ill. 2005) .............................................................................. 16

*Bonilla v. Ancestry.com Operations Inc.*,
    574 F. Supp. 3d 582 (N.D. Ill. 2021) ................................................................ 12

*Boone v. MB Fin. Bank, N.A.*,
    375 F. Supp. 3d 987 (N.D. Ill. 2019) .................................................................. 6

*Borsellino v. Goldman Sachs Grp., Inc.*,
477 F.3d 502 (7th Cir. 2007) ........................................................ 4

*Brandt v. Bos. Sci. Corp.*,
792 N.E.2d 296 (Ill. 2003) ........................................................... 17

*Calles v. Scripto-Tokai Corp.*,
864 N.E.2d 249 (Ill. 2007) ........................................................... 21

*Camasta v. Jos. A. Bank Clothiers, Inc.*,
761 F.3d 732 (7th Cir. 2014) .................................................... 4, 11

*Cozzi v. N. Palos Elementary Sch. Dist. No. 117*,
597 N.E.2d 683 (Ill. App. Ct. 1992) ........................................... 18

*D'Ambrosio v. Rajala*,
No. 24-cv-00678, 2025 WL 1383286 (N.D. Ill. May 13, 2025) .......................................... 17

*Dew-Becker v. Wu*,
178 N.E.3d 1034 (Ill. 2020) ........................................................... 9

*Dolin v. SmithKline Beecham Corp.*,
62 F. Supp. 3d 705 (N.D. Ill. 2014), *rev'd sub nom.*, 901 F.3d 803 (7th Cir. 2018) .............. 16

*Duffy v. Ticketreserve, Inc.*,
722 F. Supp. 2d 977 (N.D. Ill. 2010) ........................................... 14

*Eberhart v. Amazon.com, Inc.*,
325 F. Supp. 3d 393 (S.D.N.Y. 2018) ......................................... 17

*Frye v. L'Oreal USA, Inc.*,
583 F. Supp. 2d 954 (N.D. Ill. 2008) ........................................... 12

*Gallagher Corp. v. Mass. Mut. Life Ins. Co.*,
940 F. Supp. 176 (N.D. Ill. 1996) .................................................. 4

*Garber v. Amazon.com, Inc.*,
380 F. Supp. 3d 766 (N.D. Ill. 2019) ........................................... 17

*Gillespie v. Edmier*,
182 N.E.3d 54 (Ill. 2020) ............................................................. 20

*Horist v. Sudler & Co.*,
941 F.3d 274 (7th Cir. 2019) ....................................................... 15

*HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*,
545 N.E.2d 672 (Ill. 1989) ........................................................... 14

iv

*J.S. Sweet Co. v. Sika Chem. Corp.*,
400 F.3d 1028 (7th Cir. 2005) ...................................................................... 17

*Jackson v. Airbnb, Inc.*,
639 F. Supp. 3d 994 (C.D. Cal. 2022) .......................................................... 17

*Jacobs v. Meta Platforms, Inc.*,
No. 22CV005233, 2023 WL 2655586 (Cal. Super. Ct. Mar. 10, 2023) ............. 17

*Jane Doe No. 1 v. Uber Techs., Inc.*,
79 Cal. App. 5th 410 (2022) ......................................................................... 18

*Knight v. City of Margate*,
431 A.2d 833 (N.J. 1981) .............................................................................. 22

*Lavery v. RadioShack Corp.*,
No. 13-CV-05818, 2014 WL 2819037 (N.D. Ill. June 23, 2014) ....................... 4

*Ma v. CVS Pharmacy, Inc.*,
No. 19-CV-3367, 2020 WL 533702 (N.D. Ill. Feb. 3, 2020) ............................. 4

*Mason v. Mach. Zone, Inc.*,
140 F. Supp. 3d 457 (D. Md. 2015) .............................................................. 10

*Mednick v. Precor, Inc.*,
320 F.R.D. 140 (N.D. Ill. 2017) ...................................................................... 5

*Merrill v. Trump Indiana, Inc.*,
No. 2:99–CV–292, 2002 WL 1307304 (N.D. Ind. May 9, 2002) ..................... 22

*Mikolajczyk v. Ford Motor Co.*,
901 N.E.2d 329 (Ill. 2008) ............................................................................ 17

*Milford v. Com. Carriers, Inc.*,
210 F. Supp. 2d 987 (N.D. Ill. 2002) ............................................................ 17

*Newman v. Metro. Life Ins. Co.*,
885 F.3d 992 (7th Cir. 2018) .......................................................................... 6

*Parente v. Fay Servicing, LLC*,
No. 1:19-CV-04138, 2020 WL 1182714 (N.D. Ill. Mar. 12, 2020) ................... 7

*Phillips v. Double Down Interactive LLC*,
173 F. Supp. 3d 731 (N.D. Ill. 2016) ....................................................... 10, 11

*Pirelli Armstrong Tire Corp. v. Walgreen Co.*,
631 F.3d 436 (7th Cir. 2011) .......................................................................... 4

*Ristic v. Mach. Zone, Inc.*,
  No. 15-CV-8996, 2016 WL 4987943 (N.D. Ill. Sept. 19, 2016) .............................. 9, 10, 11

*Rodgers v. Christie*,
  795 F. App'x 878 (3d Cir. 2020) ................................................................. 18

*Salerno v. Innovative Surveillance Tech., Inc.*,
  932 N.E.2d 101 (Ill. App. Ct. 2010) ............................................................. 21

*Samansky v. Rush-Presbyterian-St. Luke's Med. Ctr.*,
  567 N.E.2d 386 (Ill. App. Ct. 1990) ............................................................. 19

*Shannon v. Boise Cascade Corp.*,
  805 N.E.2d 213 (Ill. 2004) ........................................................................ 5

*Show v. Ford Motor Co.*,
  697 F. Supp. 2d 975 (N.D. Ill. 2010), *aff'd*, 659 F.3d 584 (7th Cir. 2011) .................... 16, 18

*In re Soc. Media Adolescent Addiction/Personal Injury Prods. Liab. Litig.*,
  702 F. Supp. 3d 809 (N.D. Cal. 2023) ........................................................... 21

*Social Media Cases*, No. 22STCV21355, 2023 WL 6847378 (Cal. Super. Ct. Oct. 13, 2023) ... 20

*Sondag v. Pneumo Abex Corp.*,
  2016 IL App (4th) 140918 ..................................................................... 17, 19

*Stringer v. Packaging Corp. of Am.*,
  815 N.E.2d 476 (Ill. App. Ct. 2004) ............................................................. 20

*Taveras v. Resorts Int'l Hotel, Inc.*,
  No. 07–4555 (RMB), 2008 WL 4372791 (D.N.J. Sept. 19, 2008) .................................... 22

*Thrasher-Lyon v. Illinois Farmers Ins. Co.*,
  861 F. Supp. 2d 898 (N.D. Ill. 2012) ............................................................ 11

*Toulon v. Continental Cas. Co.*,
  877 F.3d 725 (7th Cir. 2017) ..................................................................... 6

*Washington v. Hyatt Hotels Corp.*,
  No. 1:19-CV-04724, 2020 WL 3058118 (N.D. Ill. June 9, 2020) ..................................... 6

*Wilson v. Harris N.A.*,
  No. 06 C 5840, 2007 WL 2608521 (N.D. Ill. Sept. 4, 2007) ....................................... 11

*Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*,
  536 F.3d 663 (7th Cir. 2008) ..................................................................... 4

*Ziencik v. Snap, Inc.*,
  No. CV 21-7292-DMG, 2023 WL 2638314 (C.D. Cal. Feb. 3, 2023) ................................... 18

**Statutes & Rules**

230 ILCS 10/11(10)........................................................................................................... 8

230 ILCS 45/.................................................................................................................... 8

230 ILCS 45/25-25(a)..................................................................................................... 18

815 ILCS 505/10a(e)...................................................................................................... 13

Fed. R. Civ. Proc. 9(b)........................................................................................... 1, 4, 5, 6

Fed. R. Civ. Proc. 12(b)(6)................................................................................................ 3

**Other Authorities**

Illinois Administrative Code Title 11, Chapter I, Section 1900.340(e) ...................................... 8

Restatement (Second) of Torts § 388, which Illinois.......................................................... 16, 17

Restatement (Third) of Torts: Prods. Liab. § 19 cmt. d...................................................... 21

Restatement (Third) of Torts: Prod. Liab. § 19(a), (b) & cmt................................................. 17

## INTRODUCTION

DraftKings Inc. operates an online sportsbook that allows customers over the age of 21 and located within the state of Illinois to bet on sports.[1] For the second time, Plaintiffs plead claims concerning two DraftKings promotions pursuant to the Illinois Consumer Fraud and Deceptive Business Practices Act, for intentional misrepresentation, fraudulent inducement, unjust enrichment, civil conspiracy, and products liability. Every claim again fails as a matter of law.

In their first Motion to Dismiss, Defendants identified numerous pleading and legal deficiencies in the Complaint. While the First Amended Complaint adds new claims for products liability (none of which are viable), Plaintiffs fail entirely to address the fatal faults in their pleading. Plaintiffs *still* do not allege which DraftKings promotions they purportedly saw—much less come close to satisfying the heightened requirements of Rule 9(b). And the promotions referenced in the FAC were subject to express conditions that Plaintiffs concede were disclosed to them *in full*. Further, Plaintiffs' products liability claims fail for numerous reasons, not least because DraftKings offers services, not products on its online sportsbook. For these and other reasons discussed below, the Court should dismiss the FAC in its entirety.

## FACTUAL ALLEGATIONS

In the putative class action FAC, the five plaintiffs—James Beyer, Collin Smothers, Mateen Zafer, Corey Davis, and Dashawn Bell—challenge two DraftKings promotions. The first is a "New Customer Promotion," which offered a bonus of up to $1,000 in site credits to (almost always new) DraftKings Sportsbook ("DK Sportsbook") customers who, among other things,

---

[1] Defendant DraftKings Inc. operates a licensed online sportsbook ("DK Sportsbook") in Illinois; Defendants Crown IL Gaming LLC and Northside Crown Gaming LLC are subsidiaries of DraftKings, Inc. (collectively "DraftKings"). First Amended Complaint ("FAC") ¶¶ 63, 65-66. Defendant Casino Queen, Inc. ("Casino Queen") works with DraftKings to "operate" the DK Sportsbook. *Id.* ¶ 64.

(i) deposited funds into a DraftKings account and (ii) made a certain dollar value of bets within 90 days of signing up. FAC ¶¶ 209, 217. The second is a "No Sweat Promotion" that offered a chance for customers who make an initial bet with DraftKings, and lose, to receive an additional "Bonus Bet" in site credits valued at the same amount as the first bet (*id.* ¶ 177). DraftKings initially advertised the No Sweat Promotion as a "risk-free bet" and later as a "no sweat bet." *Id.* ¶ 188.

The FAC includes undated screenshots for a "risk-free" promotion Plaintiffs claim was "typical" of those offered in Illinois, Twitter posts from 2021 and 2022, a 2024 advertisement appearing in "various" unnamed media, a December 2024 banner purporting to be from DraftKings' mobile application, and a 2025 advertisement appearing on an unnamed "affiliate marketing websites." FAC ¶¶ 162, 164, 188, 201; Figs. 2, 3, 5, 6, 7, 10. No Plaintiff, however, alleges that he saw any of these specific advertisements, identifies the particular promotions he allegedly viewed, or pleads how much he deposited or how much was matched. Regarding the New Customer Promotion:

- Neither Beyer nor Bell allege they participated in the New Customer Promotion.

- Smothers alleges he signed up for DraftKings "after viewing advertisements . . . around February 2021." *Id.* ¶ 59. He, Zafer, Bell, and Davis allege they saw the new customer signup screen on the DraftKings app. *Id.* ¶¶ 213, 215. No Plaintiff says whether he clicked the link to "View Promotion Terms" on that screen. *Id.* ¶ 213, Fig. 12.

- Davis alleges he made his first deposit in the New Customer Promotion in February 2024, but does not state whether he received any bonus under the promotion or how much he received in relation to his deposit. *Id.* ¶ 56.

- Zafer alleges he created his account in January 2023 "in response to a deposit match promotion," that he "deposited more money" than he would have, and that he "did not get his entire initial deposit matched." *Id.* ¶¶ 52-53.

Regarding the No Sweat Promotion:

- Beyer alleges he "responded" to such a promotion and was "surprised" when he did not "get his original stake back." *Id.* ¶ 47.

- Smothers alleges he viewed an advertisement for the Promotion in "early 2022" and

was "surprised" when he "lost the bet" and was "not credited the amount he had bet and instead received an expiring 'Bonus Bet' with no cash value." *Id.* ¶¶ 60-61.

- Davis alleges he "opted-in" to a No Sweat Promotion "shortly" after he opened an account in November 2023. *Id.* ¶¶ 56-57.

- Zafer alleges he "responded to" advertising for the No Sweat Promotion and "[o]n information and belief" placed his "first such bets [sic] while present in Illinois," but after losing, learned DraftKings "would not return him to the position he was in when he initially placed the bet." *Id.* ¶ 54.

- Bell alleges that he "recalls seeing advertisements" for the No Sweat Promotion, but does not allege that he participated in that Promotion. *Id.* ¶ 167.[2]

Finally, Beyer alleges he created his "first account" on DraftKings when he was under the age of 18, then created additional accounts and participated in "contests" on DraftKings' DFS platform ("DK DFS") before he turned 21. *Id.* ¶¶ 45 & 146. Beyer also alleges that he "observ[ed]" advertisements for DraftKings before he turned 21, but he does not allege that he could, or did, place any bets when he was under the legal age for sports betting in Illinois. *Id.* ¶ 126. To the contrary, he alleges he "deposited money" and "began making paid bets" *after* turning 21. *Id.* ¶ 46.

## LEGAL STANDARD

Under Rule 12(b)(6), the inquiry is whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court is "not bound to accept as true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action[.]" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "Pleading facts 'merely

---

[2] Bell's allegations frequently fail to map onto any of the claims actually asserted. He alleges that he was able to change his deposit limit with ease (FAC ¶ 33) but asserts no claim on that basis. To the extent he purports to assert claims for either Promotion, those should be dismissed for the simple reason that he never alleges he participated in the Promotions. The FAC also contains allegations about VIP Hosts (*id.* ¶¶ 39-40) but again, asserts no claim arising from those facts.

consistent with' a defendant's liability and pleading legal conclusions disguised as factual allegations are, by themselves, insufficient." *Lavery v. RadioShack Corp.*, No. 13-CV-05818, 2014 WL 2819037, at \*1 (N.D. Ill. June 23, 2014) (quoting *Iqbal*, 556 U.S. at 678).

Moreover, in cases like this one, which involve claims sounding in fraud, Rule 9(b) applies. *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). "One of the purposes of the particularity and specificity required under Rule 9(b) is to force the plaintiff to do more than the usual investigation before filing his complaint." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736–37 (7th Cir. 2014) (cleaned up). A plaintiff "must state the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated." *ABN AMRO, Inc. v. Cap. Int'l Ltd.*, 595 F. Supp. 2d 805, 849 (N.D. Ill. 2008); *see Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 668 (7th Cir. 2008).

## ARGUMENT

### I.     COUNTS 1 THROUGH 8 (PLAINTIFFS' FRAUD-BASED CLAIMS) FAIL TO SATISFY RULE 9(B)'S HEIGHTENED STANDARD.

Counts 1-8 of the FAC—all of Plaintiffs' non-"products" counts—must meet the requirements of Rule 9(b).[3] No Plaintiff comes close to clearing that bar *despite* Defendants' earlier Motion to Dismiss. None of them identify the specific promotion they entered or advertisements on which they allegedly relied. Plaintiffs do not even include screenshots or allege specific terms on which they relied, despite admitting that the content of those Promotions and

---

[3] Rule 9(b) applies to the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") claims, and those for intentional misrepresentation, fraudulent inducement, unjust enrichment, and conspiracy because they each sound in fraud. *Gallagher Corp. v. Mass. Mut. Life Ins. Co.*, 940 F. Supp. 176, 180 (N.D. Ill. 1996); *Pirelli Armstrong Tire Corp. v. Walgreen Co.*, 631 F.3d 436, 447 (7th Cir. 2011); *Ma v. CVS Pharmacy, Inc.*, No. 19-CV-3367, 2020 WL 533702, at \*5 (N.D. Ill. Feb. 3, 2020).

advertisements varied over time. FAC ¶ 148. This is fatal to all their fraud-based claims. *Mednick v. Precor, Inc.*, 320 F.R.D. 140, 149 (N.D. Ill. 2017); *Shannon v. Boise Cascade Corp.*, 805 N.E.2d 213, 217 (Ill. 2004) ("[D]eceptive advertising cannot be the proximate cause of damages under the Act unless it actually deceives the plaintiff.").

*First*, the allegations regarding the New Customer Promotion are ambiguous as to time, and unspecific as to medium, FAC ¶¶ 209 (offered "[f]or several years"), 210-11). Beyer alleges nothing relating to which Promotion he allegedly saw, Bell does not allege he participated in the Promotion at all, while the other Plaintiffs fail to allege any facts confirming that they saw advertisements for the New Customer Promotion, let alone with the requisite particularity.

*Second*, Plaintiffs merely assert that DraftKings ran a No Sweat Promotion. Bell, Beyer, and Zafer never allege when they saw an advertisement, if any, or what terms it disclosed. Davis alleges only that he saw "various" advertisements. *Id.* ¶ 56. Smothers alleges only that he received two emails in **February 2021** and **November 2022**; but those emails are, *by his own admission*, not the advertisement that allegedly induced him to enter the No Sweat Promotion in "**early 2022**." *Id.* ¶¶ 60 (emphasis added); 172-73. The *only* email he quotes states (twice) that DraftKings would "credit [the customer's] bet back as a Free Bet." *Id.* ¶¶ 60, 172, Fig. 4.

Counts 1-8 must therefore be dismissed on a straightforward application of Rule 9(b)—each Plaintiff was required to, but did not, identify the specific advertisement(s) they saw and relied upon. The Court need not go beyond that simple fact to dismiss these claims.

## II.    THE COURT SHOULD DISMISS THE ICFA CLAIMS.

Plaintiffs plead Counts 1 through 3 under the ICFA. The ICFA "allows a plaintiff to premise her claim on either deceptive conduct or unfair conduct (or both), but the two categories have different pleading standards." *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019) (cleaned up). Plaintiffs fail to plead actionable claims under either.

### A. DraftKings' Promotional Advertising Was Not Deceptive.

Plaintiffs primarily plead that the ICFA claims relating to the Promotions arise from deceptive acts. *See* FAC ¶¶ 305-06 & 314 (Count 1); 322-23 & 328 (Count 2); 340 (Count 3). Deceptiveness is considered "in light of the totality of the information made available to plaintiff[s]." *Toulon v. Continental Cas. Co.*, 877 F.3d 725, 739 (7th Cir. 2017) (cleaned up). As discussed above, deceptiveness must be pled with particularity under Rule 9(b).

No deception exists "if a consumer has been alerted to the possibility of the complained-of result." *Newman v. Metro. Life Ins. Co.*, 885 F.3d 992, 1001 (7th Cir. 2018); *see Boone v. MB Fin. Bank, N.A.*, 375 F. Supp. 3d 987, 997 (N.D. Ill. 2019) (dismissing ICFA claim where defendant "provided all the necessary information concerning the [overdraft] charges"); *Washington v. Hyatt Hotels Corp.*, No. 1:19-CV-04724, 2020 WL 3058118, at *5 (N.D. Ill. June 9, 2020) (dismissing ICFA claim because defendant "disclosed the existence and amount of resort fees . . . during the booking process"). Plaintiffs admit that is precisely what happened here.

Regarding the No Sweat Promotion, Plaintiffs allege they are entitled to a "cash refund[]" they purportedly were promised if they lost a No Sweat Bet. FAC ¶ 315. Plaintiffs admit, however, that DraftKings disclosed *all* of the Promotion's requirements in the advertisements and terms, including that the promotion provided a Bonus Bet rather than cash. Indeed, Plaintiffs concede that the terms specified that customers would need "to make an additional, successful wager," and that all customers could access, via a link, the full terms and conditions of the promotion. *Id.* ¶¶ 187, 190-92. Plaintiffs even include an example advertisement from March 2024 which makes clear that all relevant terms were disclosed. *Id* ¶ 188, Fig. 5. Plaintiffs also acknowledge that No Sweat Promotion advertisements "referenc[ed] other terms" like those they included in Figure 9. *Id.* ¶¶ 189-90, 193. Moreover, that same advertisement—without clicking on any hyperlink—states the time limit in hours and wager requirements. *Id.* ¶ 188, Fig. 5. The full terms, included in the FAC,

disclosed those conditions and more. *Id.* ¶ 193, Fig. 9. By Plaintiffs' admissions, the circumstances in which a customer could receive and use a Bonus Bet were all disclosed. There was no deception.

The same is true of the New Customer Promotion. Plaintiffs again concede the terms of the promotion were fully disclosed in the terms and conditions, though they omit the terms from their FAC. *Id.* ¶¶ 212-13, 224, Figs. 11-13 & ¶ 228.[4] The terms of the New Customer Promotion explained each requirement that Plaintiffs claim made the promotion misleading. *First*, although, Plaintiffs contend the promotion is misleading because a new customer "would have to deposit $5,000 up front" to earn the full bonus, (FAC ¶ 231), the terms disclose that "the [customer] must deposit $5,000 to be eligible" to earn the full bonus amount. Declaration of Gary Wimbridge ("Wimbridge Decl.") ¶¶ 6-8; *see* Exs. 1-3 (conspicuously displaying requirement on DraftKings' deposit page). *Second*, while Plaintiffs contend the promotion is misleading because they "would have to bet $25,000 within 90 days," (FAC ¶ 231), that requirement too was disclosed: customer must "play through a cumulative total of $25,000" which "must be met 90 days from the date of first deposit" (or which "must be met within ninety (90) days"). Wimbridge Decl. ¶¶ 6-8; *see* Exs. 1-3. *Third*, despite alleging that promotion is misleading because bets would have to be placed on "wagers with odds of '-300 or longer,'" (FAC ¶ 231), Plaintiffs again ignore that this was disclosed: bets must be on "daily fantasy contests, sportsbook (-300 odds or longer)," or the Promotion was "applicable only on paid DFS contests, Sportsbook bets (-300 odds or longer), casino products, or any combination thereof)." Wimbridge Decl. ¶¶ 6-8; *see* Exs. 1-3. Accordingly,

---

[4] The Court may nonetheless consider the terms in ruling on this Motion, even though Plaintiffs did not include them in the FAC, because courts may "consider certain documents attached to briefs on a motion to dismiss . . . 'if they are referred to in the plaintiff's complaint and are central to his claim.'" *Parente v. Fay Servicing, LLC*, No. 1:19-CV-04138, 2020 WL 1182714, at *3 n.1 (N.D. Ill. Mar. 12, 2020) (citation omitted). Here, Plaintiffs repeatedly referenced the terms of the New Customer Promotion in the FAC. *See, e.g.,* FAC ¶¶ 216-17.

Plaintiffs cannot prevail on any claim that either Promotion is deceptive under the ICFA because, as Plaintiffs acknowledge, all material terms of the Promotions were disclosed to each of them.

**B.    DraftKings' Promotional Advertising Was Not Unfair.**

Beyer makes a conclusory and unsupported allegation that DraftKings engaged in "unfair" conduct by "target[ing] minors and those under the age of twenty-one years old." FAC ¶ 339. Beyond its patent falsity, these allegations are plainly inadequate to state any claim for relief. To plead unfair conduct, Beyer must allege that DraftKings' practices "(1) offend[] public policy; (2) [are] immoral, unethical, oppressive, or unscrupulous; or (3) cause[] substantial injury to consumers." *Batson v. Live Nation Ent., Inc.*, 746 F.3d 827, 830 (7th Cir. 2014). "A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." *Id.* (cleaned up). Beyer's allegations fail to meet any of these requirements.

**1.    DraftKings' Lawful Conduct Does Not Offend Public Policy.**

Beyer contends that DraftKings acted "contrary to established Illinois public policy" because it "targeted minors and those under the age of twenty-one years old." FAC ¶ 339. However, he fails to allege that DraftKings engaged in any *specific* acts that purportedly violated any law, imposed grossly unfair terms on individuals, or breached any contract with customers. Instead, he alleges generally that DraftKings violated the statutory prohibition forbidding individuals under the age of 21 from gambling (230 ILCS 10/11(10)) and the Illinois regulation barring advertising to individuals under the legal gambling age (Illinois Administrative Code Title 11, Chapter I, Section 1900.340(e)). *See id.* ¶ 339. These allegations are meritless.

*First*, Beyer does not allege that he was permitted to place bets before he was 21. Rather, he criticizes the entire concept of sports betting in Illinois. *Id.* ¶¶ 113-121. But by legalizing sports betting in June 2019, the legislature decided that it does not violate public policy for people over the age of 21 to bet on sports. *See* 230 ILCS 45/25. Further, courts have found that gambling is not

per se "unlawful" under the ICFA. *See Ristic v. Mach. Zone, Inc.*, No. 15-CV-8996, 2016 WL 4987943, at *3 (N.D. Ill. Sept. 19, 2016) (finding online casino-like mobile app did not violate ICFA because gambling is not against public policy).

*Second*, Beyer claims that he was allowed to participate in DK DFS before he turned 21, but Beyer has not alleged, and cannot allege, that DraftKings' DFS is unlawful in Illinois— whether or not the participant is under 21. *See* FAC ¶ 146. The Illinois Supreme Court has resolved that DFS is not considered gambling as a matter of Illinois law. *Dew-Becker v. Wu*, 178 N.E.3d 1034, 1040–41 (Ill. 2020). Therefore, even if Beyer played DK DFS while he was under 21, he was not gambling while doing so, and DraftKings has not violated any law or public policy by providing access to DK DFS.

*Third*, Beyer does not plausibly allege that any of the unspecified advertisements he "observ[ed]" violated any Illinois statute or regulation. He does not allege that the content, format, or distribution of any advertisement was unlawful or improper, that specific advertisements were targeted to individuals under the legal gambling age, or even whether those advertisements were for products that are lawful for those under the legal gambling age to use. He has provided nothing for DraftKings or the Court to assess the nature of the purportedly unconscionable advertising.

*Finally*, Beyer's only tangible example demonstrates the paucity of his allegations. He points to a November 2024 Twitter post listing odds for a College Football Playoff game. FAC ¶ 129, Fig. 1. From that, he contends that DraftKings "routinely" promoted gambling on "collegiate sporting events," but fails to explain how legal advertising about collegiate sports—or any other sports—targets individuals under the legal gambling age. That DraftKings advertises the ability to wager on collegiate events does not mean that DraftKings "intentionally target[ed] its marketing to boys and young men." *Id*. ¶ 130. Beyer fails even to allege that *he* saw this advertisement. He

9

pushes any possible inference past the breaking point. Beyer has not alleged any act that violates public policy.

### 2. Beyer has not alleged immoral, oppressive, or unscrupulous acts.

Turning to the second prong, conduct is "immoral, unethical, oppressive, or unscrupulous under Illinois law *only if* it imposes a lack of meaningful choice or an unreasonable burden on its target." *Ristic*, 2016 WL 4987943, at *4 (emphasis added) (dismissing ICFA claim). Where a plaintiff "made a voluntary choice" to engage in the allegedly harmful behavior, the defendant did not act contrary to the ICFA. *Id.* In other words, the ICFA does not "protect [a plaintiff] from his own decision to play [in a] [c]asino." *Id.* When considering an ICFA claim, the "[c]ourt does not sit in judgment of the entertainment choices that Plaintiff and others like [him] have made—but it will not allow Plaintiff to foist the consequences of those choices onto an entertainment purveyor[.]" *Id.* (quoting *Mason v. Mach. Zone, Inc.*, 140 F. Supp. 3d 457, 469 (D. Md. 2015)).

Here, Beyer alleges that DraftKings "inculcate[d] gambling habits," (FAC ¶ 340), but he never alleges that DraftKings allowed him, or anyone under the legal gambling age, to gamble. He also never explains *how* DK DFS is unfair and never offers more than a threadbare assertion that allowing a customer to participate in a legal, fair, non-deceptive activity (DFS) means that DraftKings acted unconscionably when it later allowed the same customer, after they were of legal gambling age, to use DK Sportsbook. Two legal acts do not make an unconscionable act.

Beyer's general and unsupported allegations that DraftKings offers enticing or addictive betting do not suffice. While DraftKings categorically denies his allegations, the "use of psychological triggers that prompt regular consumers, as well as addicts, to continue wagering" does not violate the ICFA because courts have found plaintiffs "ma[k]e a voluntary choice" to continue gambling. *Ristic*, 2016 WL 4987943, at *4; *see also Phillips v. Double Down Interactive LLC*, 173 F. Supp. 3d 731, 743 (N.D. Ill. 2016) (online gaming not "so oppressive that it leaves

the consumer with little alternative except to submit to it" because the player "could have picked other forms of entertainment, or even sought to play online games on a different platform or website") (cleaned up). Beyer has not alleged a violation of the ICFA's second unfairness prong.

### 3.    Beyer does not allege substantial injury to consumers.

Beyer also fails to allege facts sufficient to satisfy the third prong of the unfairness test. "A practice causes substantial injury to consumers if it causes significant harm to the plaintiff and has the potential to cause injury to a large number of consumers." *Wilson v. Harris N.A.*, No. 06 C 5840, 2007 WL 2608521, at *8 (N.D. Ill. Sept. 4, 2007) (cleaned up). Not all injuries are compensable under the ICFA. Only if the consumer "could not reasonably have avoided" the injury does he properly assert an unfairness claim. *Phillips*, 173 F. Supp. 3d at 743 (citation omitted). In the context of gaming, a consumer does not assert a proper ICFA claim where he "could have avoided the cost of buying more chips by . . . opting for alternative entertainment when she ran out of chips[.]" *Id.*; *see Ristic*, 2016 WL 4987943, at *4 (dismissing ICFA claim because gaming did not "cause[] substantial injury" where player "could reasonably have avoided 'losing' money . . . in a number of ways," including by not playing the game). Beyer chose to bet on DK Sportsbook after turning 21 and he does not allege, as would be required, that he "could not reasonably have avoided" betting on DraftKings. Thus, his ICFA claim also fails to satisfy the third prong of the unfairness test.

### C.    **Plaintiffs Have Not Pled Actual Damage Concerning The Promotions.**

In an ICFA action, "actual damages requires that the plaintiff suffer *actual pecuniary loss.*" *Camasta*, 761 F.3d at 739 (cleaned up; emphasis added). Damages "must be calculable," and "mere legal conclusions" that the plaintiff "was damaged" which "fail to provide Defendants with any notice about the amount and extent of harm" are insufficient. *Thrasher-Lyon v. Illinois Farmers Ins. Co.*, 861 F. Supp. 2d 898, 913 (N.D. Ill. 2012) (cleaned up). Thus, to state a claim,

11

the "alleged deception must have affected plaintiff in a way that made her *tangibly worse off.*" *Frye v. L'Oreal USA, Inc.*, 583 F. Supp. 2d 954, 957 (N.D. Ill. 2008) (emphasis added). Further, the plaintiff must plead that the "damage complained of was proximately caused by the deception." *Bonilla v. Ancestry.com Operations Inc.*, 574 F. Supp. 3d 582, 595 (N.D. Ill. 2021).

Plaintiffs allege that but-for the Promotions, they "would not have created accounts with DraftKings and/or would not have deposited as much money into their DraftKings accounts and/or placed bets on DraftKing's platform." FAC ¶¶ 314 & 331. These allegations—which seek "cash refunds" and/or a "cash deposit match"—are not claims of pecuniary loss. Plaintiffs do not allege they *lost* money in reliance on either promotion, only that they did not gain the reward they expected (and moreover, creating an account is not a loss, nor is depositing money where it remains within the user's control). As to the bets Plaintiffs "placed and lost," they fail to allege how much Plaintiffs were injured*,* when they suffered the loss, or how they were "tangibly worse off." Particularly flawed are the allegations regarding the New Customer Promotion, which amount to claims that they might have received additional cash had they satisfied the requirements for that Promotion. Yet, Plaintiffs fail to allege how much they deposited, what portion (if any) of the New Customer Promotion's requirements they met, or how much (if any) they received as a "cash deposit match" or what they expected to receive (Beyer and Bell do not even allege they took advantage of the New Customer Promotion). In any event, other than allegedly not gaining a promotional match they were never entitled to, whether or not each qualified for the New Customer Promotion, Plaintiffs' deposits remained fully under their control, so they *lost no money*.

As for Beyer's targeting claim in Count 3, he alleges only that he has generally lost money on DraftKings, and that "DraftKings was [] able to secure Plaintiff Beyer's loyal business" and that he "has lost a significant amount of money gambling on DraftKing's [sic] sportsbook." FAC

¶¶ 152-53. He never states whether he seeks all, or a portion, of his gambling losses as damages. He claims (again, generally) that he (and the class) suffered "actual damage[]" because they "would have behaved differently and would not have engaged in sports betting on DraftKing's [sic] platform or would have gambled less money and less frequently." *Id.* ¶ 345. Importantly, he does not allege how *he* would have behaved differently, or how that injured him. Beyer has failed entirely to link DraftKings' legal offering of DK DFS, or advertising to the public, to any tangible loss that he has suffered. His ICFA claim should be dismissed for this reason alone.[5]

> **D.** **Smothers' New Customer Promotion Claim Is Time Barred.**

The ICFA provides for a three-year statute of limitations. 815 ILCS 505/10a(e). The Complaint was filed in January 2025. Smothers alleges that he "funded his account after viewing advertisements for DraftKings' 'Deposit Match' promotions in or around February 2021." FAC ¶ 59. Even ignoring Plaintiffs' generic pleading regarding claim accrual, Smothers admits that he knew "after [he] made [his] deposit[] and opted into the promotion" that he did not receive a match "in full up to $1,000." *Id.* ¶¶ 229-30. Because that is when his claim therefore accrued, the time for Smothers to bring a claim under the ICFA relating to the New Customer Promotion (Count 2) expired in February 2024.

> **III.** **THE COURT SHOULD DISMISS THE NON-ICFA FRAUD CLAIMS.**

> **A.** **The Court Should Dismiss The Claims For Intentional Misrepresentation and Fraudulent Inducement (Counts 4, 5 & 6)**

"[T]o state a claim for common law fraud under Illinois law, a plaintiff must allege" that

---

[5] Plaintiffs purport to seek injunctive relief without making the requisite showing of imminent future harm. *See* FAC ¶ 42. A "plaintiff's awareness of the alleged misrepresentations makes any future harm speculative, precluding that plaintiff from pursuing injunctive relief." *In re Beyond Meat, Inc., Protein Content Mktg. & Sales Pracs. Litig.*, 718 F. Supp. 3d 800, 810 (N.D. Ill. 2024). That request should also be dismissed.

"the plaintiff reasonably relied upon the truth of the statement; and [] the plaintiff suffered damages as a result of his reliance." *Duffy v. Ticketreserve, Inc.*, 722 F. Supp. 2d 977, 991 (N.D. Ill. 2010). It is not enough for a plaintiff to "claim to have relied on sales and promotional representations that are directly controverted by the governing contractual language" if "the [plaintiff] had ample opportunity to review the contract before signing it[.]" *Id.* Plaintiffs fail to allege that statements in the Promotions were false and, by their own admission, the advertisements and terms fully disclose everything they claim was misleading. *See supra*, Section II(A). Their intentional misrepresentation and fraudulent inducement claims should therefore be dismissed.

### B.  The Court Should Dismiss The Claims For Unjust Enrichment (Count 7)

Plaintiffs also fail to state a claim for unjust enrichment. "To state a cause of action based on a theory of unjust enrichment, a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (Ill. 1989); *see Ass'n Benefit Servs. Inc. v. Caremark RX, Inc.*, 493 F.3d 841, 855 (7th Cir. 2007) ("resolution of the fraud claim against the plaintiff is dispositive of the unjust enrichment claim as well"). Plaintiffs have done neither.

*First*, Plaintiffs failed to specify the alleged "benefit" they purportedly conferred on DraftKings. At most, Plaintiffs contend they "paid more money to DraftKings to place bets than they otherwise would and/or should have paid." FAC ¶ 395. It is impossible to infer from that generic pleading what benefit was retained by DraftKings, if any. It is unclear whether this "benefit" includes the entire value of any bet, just losing bets, or something else entirely.

*Second*, to establish that DraftKings inequitably retained these benefits, Plaintiffs attempt to rely on generic assertions that the advertisements were "false and misleading" and "target[ed] underage users." *Id.* ¶¶ 392-93. Again, however, this goes nowhere for the same reason the fraud

claims fail—all the Promotions' terms were disclosed, and there are no allegations that DraftKings allowed customers under the legal gambling age to bet on DK Sportsbook. *See* Section II, *supra*.

## IV.    THE COURT SHOULD DISMISS PLAINTIFFS' CIVIL CONSPIRACY CLAIM.

Plaintiffs assert a catch-all conspiracy claim alleging that DraftKings and Casino Queen participated in the various allegedly fraudulent or deceptive practices that are the subject of Plaintiffs' other claims. Other than introductory factual information about Casino Queen, the FAC is silent as to Casino Queen's alleged involvement in any of the alleged bad acts. Where "a plaintiff fails to state an independent cause of action underlying its conspiracy allegations, the claim for a conspiracy also fails." *Horist v. Sudler & Co.*, 941 F.3d 274, 281 (7th Cir. 2019) (cleaned up). Plaintiffs fail to assert anything more than bare conclusions as to Casino Queen's alleged involvement in various acts discussed elsewhere in the FAC. These assertions are not sufficient to state a claim for conspiracy. Even if they were, this claim fails for the same reasons as Plaintiffs' underlying fraud claims fail, and it must also be dismissed as a matter of law.

## V.    THE COURT SHOULD DISMISS THE PRODUCTS LIABILITY CLAIMS.

The FAC asserts products liability claims under both strict liability and negligence theories. Although these theories are sketched out in only the barest of terms, Plaintiffs seem to allege that DraftKings' services are a "product" that both is "defective" because it was designed to addict users, and "fails to warn" about a purported risk of addiction. FAC ¶¶ 240-42, 276, 244, 430-37, 454-66.[6] These claims lack merit and warrant dismissal.

For strict products liability, "the injury complained of [must have] resulted from a condition of the product, that the condition was unreasonably dangerous, and [] existed at the time

---

[6] To the extent Plaintiffs allege that DraftKings' promotions or advertisements are themselves "products" subject to products liability law, that theory is a dead end.

the product left the manufacturer's control." *Dolin v. SmithKline Beecham Corp.*, 62 F. Supp. 3d 705, 721 (N.D. Ill. 2014), *rev'd sub nom.*, 901 F.3d 803 (7th Cir. 2018). For negligence, the plaintiff "must do more than simply allege a better design for the product; he must plead and prove evidence of a standard of care by which to measure a defendant's design and establish a deviation from that standard." *Blue v. Env't Eng'g, Inc.*, 828 N.E.2d 1128, 1141 (Ill. 2005); *Show v. Ford Motor Co.*, 697 F. Supp. 2d 975, 986–87 (N.D. Ill. 2010), *aff'd*, 659 F.3d 584 (7th Cir. 2011) (discussing that plaintiff may also show "manufacturer knew or should have known of the risk posed by the product design and failed to warn the plaintiff of its dangerous propensities."). "The remaining negligence elements of causation and damages must also be shown." *Id.* at 987.

### A.    The DraftKings App Is Not Covered By Products Liability Law.

Whether sounding in strict liability or negligence, every products liability claim must begin with a "product"—and that is where Plaintiffs' claims end. The FAC admits that DraftKings' offerings "are not typical consumer products." FAC ¶ 113. As a matter of Illinois law, they are not "products" at all. DK Sportsbook lacks any of the characteristics of a "product" for purposes of products liability. Moreover, under either theory, a products liability claim must also involve an inherently dangerous product, and a plaintiff must have suffered cognizable physical injury. Neither is true here.

### 1.    DraftKings' Intangible Services Are Not A "Product" Under Illinois Products Liability Law.

DK Sportsbook is a platform for sports betting. It is not a product for purposes of products liability law. One cannot hold it, store it, eat it, or sell it. This reality defeats Plaintiffs' claims, for in Illinois, "products" subject to "products liability" law must be tangible. This blackletter rule follows from the Restatement (Second) of Torts § 388, which Illinois has adopted, and its requirement that plaintiffs pursuing products liability claims have suffered physical harm resulting

16

from the use of "chattels." *Sondag v. Pneumo Abex Corp.*, 2016 IL App (4th) 140918, ¶ 26; Restatement (Second) of Torts § 388 (1965). The "common legal definition" of "chattel" is "movable or transferable property; personal property," *i.e.*, tangible objects. *Beaton v. SpeedyPC Software*, 666 F. Supp. 3d 724, 731 (N.D. Ill. 2023); *see* Restatement (Third) of Torts: Prod. Liab. § 19(a), (b) & cmt. f (1998) (noting that for products liability, a "product is tangible personal property distributed commercially for use or consumption . . . Services, even when provided commercially, are not products"); *Mikolajczyk v. Ford Motor Co.*, 901 N.E.2d 329, 352 (Ill. 2008) (finding the Third Restatement's "formulation of the risk-utility test to be instructive" but not binding).

Illinois—for good reason—has *never* extended products liability law to a website or app providing services, like DK Sportsbook. *See D'Ambrosio v. Rajala*, No. 24-cv-00678, 2025 WL 1383286, at *12 (N.D. Ill. May 13, 2025) (dismissing products liability based on alleged defects with Meta's app and algorithm because they are "service platforms," not products); *Brandt v. Bos. Sci. Corp.*, 792 N.E.2d 296, 302 (Ill. 2003) (holding that courts "must find that the defendant sold a product rather than services before imposing liability."); *Garber v. Amazon.com, Inc*., 380 F. Supp. 3d 766, 778 (N.D. Ill. 2019) ("[S]ervice providers generally are not subject to strict products liability."); *Milford v. Com. Carriers, Inc.*, 210 F. Supp. 2d 987, 990 (N.D. Ill. 2002) (same). This Court should not be the first. *See J.S. Sweet Co. v. Sika Chem. Corp.*, 400 F.3d 1028, 1034 (7th Cir. 2005) (noting "reluctance as a court sitting in diversity to expand state law").[7]

---

[7] This bright-line rule is not unique to Illinois. Courts routinely reject products liability claims against internet-based platforms and software service providers. *See, e.g.*, *Jackson v. Airbnb, Inc*., 639 F. Supp. 3d 994, 1010-11 (C.D. Cal. 2022) (finding Airbnb's platform is "more akin to a service than to a product"); *Eberhart v. Amazon.com, Inc*., 325 F. Supp. 3d 393, 399 (S.D.N.Y. 2018) (ruling Amazon is a provider of services through its marketplace and not a distributor of products); *Jacobs v. Meta Platforms, Inc*., No. 22CV005233, 2023 WL 2655586, at *4 (Cal. Super. Ct. Mar. 10, 2023) (dismissing product liability claim where "Plaintiffs' negligent design claim is

### 2.    DraftKings Sportsbook is Not "Unreasonably Dangerous."

Under both strict and negligent products liability law, Plaintiffs must establish that the "product was unreasonably dangerous due to the existence of a defective condition." *Show*, 697 F. Supp. 2d at 987. In other words, they must prove the product "failed to perform in the manner that was reasonably expected in light of [its] nature and intended function." *Cozzi v. N. Palos Elementary Sch. Dist. No. 117*, 597 N.E.2d 683, 687 (Ill. App. Ct. 1992).

Plaintiffs have not plausibly alleged that DraftKings' site is dangerous at all, let alone "unreasonably dangerous." For one, Plaintiffs allege that DK Sportsbook performs exactly as expected—it allows users to bet on sports. *See Antar v. BetMGM, LLC*, No. 24-1364, 2025 WL 1219316, at *3 (3d Cir. Apr. 28, 2025) ("Each time Antar placed a bet . . . he received exactly what he thought he was purchasing—a gambling experience where winning was not guaranteed."). There are simply no allegations of a defective condition. Additionally, it defies belief that it is "unreasonably dangerous" for DraftKings to enable betting on sports games given that the State of Illinois has licensed DraftKings to do exactly that *and* the State of Illinois has expressly declared it is "lawful" for a licensed entity like DraftKings to do so, "[n]otwithtanding any provision of law to the contrary." 230 ILCS 45/25-25(a). Plaintiffs' never so much as suggest that DraftKings has violated any aspect of Illinois's comprehensive statutory and regulatory scheme regarding sports betting.

---

based on the design of the social media platform itself, which provides a service"); *Jane Doe No. 1 v. Uber Techs., Inc.*, 79 Cal. App. 5th 410, 419 (2022) ("Uber app was not a product, and thus a products liability theory of recovery was not legally viable."); *Ziencik v. Snap, Inc.*, No. CV 21-7292-DMG (PDx), 2023 WL 2638314, at *4 (C.D. Cal. Feb. 3, 2023) ("Snapchat is more like a service than a product, and services are not subject to the laws of strict products liability."); *Rodgers v. Christie*, 795 F. App'x 878 (3d Cir. 2020) (finding algorithm embodied in software was "neither 'tangible property' nor remotely 'analogous' to it.").

### 3. Plaintiffs Did Not Suffer Physical Harm.

Plaintiffs also have not alleged physical harm as a result of using DK Sportsbook. "'Physical harm' is an essential element of any action for products liability, regardless of whether the action sounds in negligence or strict liability." *Sondag*, 2016 IL App (4th) 140918, ¶ 23 (cleaned up). Physical harm means "a physically impairing loss or detriment." *Id*. ¶ 28 (cleaned up). There must be an "alteration of the body" that has "a detrimental effect in a [] practical sense," such as by causing "noticeable" symptoms. *Id*. ¶¶ 35-36 (cleaned up). Plaintiffs make conclusory allegations that they have suffered "physical, emotional, and economic injuries" and that the promotions at issue "cause addiction and compulsive gambling, which are associated with concomitant physical and mental injuries." (FAC ¶¶ 422, 432a). They do not, however, allege what those injuries are, how the symptoms manifest physically, or which Plaintiffs even suffer from them. That is insufficient to state a claim for relief.

### B. Plaintiffs' Strict Liability Claims Fail Because Unfixed And Changeable Digital Services Like DraftKings' Platform Are Not Products.

Independent of the broadly fatal problems with Plaintiffs' products liability claims (under any theory), DK Sportsbook is not a "product" subject to strict products liability for an additional reason: under Illinois law, strict liability applies only where a defective product is placed into the stream of commerce in an unaltered, fixed condition. *See Samansky v. Rush-Presbyterian-St. Luke's Med. Ctr.*, 567 N.E.2d 386, 394 (Ill. App. Ct. 1990); *Baley v. Fed. Signal Corp.*, 2012 IL App (1st) 093312, ¶ 66.

DK Sportsbook, however, is inherently unfixed. Each user's experience of the service changes over time and each user's experience is itself different from that of other users. This fluidity of experience makes the standard tools for analyzing products liability claims—the consumer expectations and risk-benefit tests—so ill-suited as to be inapplicable because each user

"may have a multiplicity of consumer expectations and may seek very different benefits."[8] *See, e.g., Social Media Cases*, No. 22STCV21355, 2023 WL 6847378, at *20 (Cal. Super. Ct. Oct. 13, 2023). Plaintiffs' apparent theory of liability illustrates the problem. Rather than allege that the DK Sportsbook "left the factory"—which again, is impossible given the nature of the service— they rely on various long-term interactions users allegedly have with the service. They do not allege that a specific DraftKings product was unreasonably dangerous at the time of sale (nor can they, because DraftKings does not "sell" bets). This changeable experience, of a digital service, simply is not the kind of product design defect Illinois evaluates under a strict liability regime. *See Gillespie v. Edmier*, 182 N.E.3d 54, 58 (Ill. 2020) (strict liability applies only where the allegedly defective "condition existed at the time the product left the manufacturer's control").

## C.  Plaintiffs' Negligent Products Liability Claims Fail.

### 1.  Plaintiffs Incorrectly Point To DraftKings' Business Operations, Not Products, As Defective.

Plaintiffs' negligent products liability claims also fail for independent reasons. At times, Plaintiffs appear to suggest as an alternative theory that certain DraftKings promotions and features of the app are themselves defective. *See* FAC ¶¶ 257, *et seq.* Initially, no court in Illinois has extended products liability law to cover *the terms* of a *promotion or advertisement*. Further, although Plaintiffs briefly plead that the individual "features described in this [FAC] constitute individual products," FAC ¶ 412, there is no basis under Illinois law to parse a products liability claim in that manner. Even if there were, a feature-by-feature analysis does not save Plaintiffs' claims. Most of the alleged defects are simply DraftKings' communications to users, and

---

[8] Equating digital services to a tangible "product" in the stream of commerce also has vast practical implications for products liability cases; for example, the consideration of what should a plaintiff preserve in discovery to prove a case. *See Stringer v. Packaging Corp. of Am.*, 815 N.E.2d 476, 479 (Ill. App. Ct. 2004).

communications are not cognizable as product defects. Restatement (Third) of Torts: Prods. Liab., § 19 cmt. d (product liability law does not apply when the "plaintiff's grievance . . . is with the information [transmitted], not with the tangible medium" itself); *see also Angelilli v. Activision Blizzard, Inc.*, No. 23-CV016566, 2025 WL 1184247, at *5 (N.D. Ill. Apr. 23, 2025) (holding First Amendment precluded products liability claims based on alleged addictive properties of videogame where "what Plaintiffs complain of is the words and images that appeared on D.G.'s various gaming devices"); *In re Soc. Media Adolescent Addiction/Personal Injury Prods. Liab. Litig.*, 702 F. Supp. 3d 809, 837 (N.D. Cal. 2023) (affirming that First Amendment "affords protection with respect to the timing and clustering notifications of defendants' content to increase addictive use"). Moreover, if each individual feature is a separate product, Plaintiffs have failed to state a claim in every instance, as they never even specify the supposed defects, let alone allege the necessary elements for each alleged defect. Plaintiffs' negligent products liability claim should be dismissed.

### 2. Plaintiffs Fail to Plausibly Allege DraftKings Owed Them a Duty.

For a negligence product liability claim, "the threshold question is not whether the product could have been made safer, but whether it is dangerous because it fails to perform in the manner reasonably to be expected in light of its nature and intended function." *Salerno v. Innovative Surveillance Tech., Inc.*, 932 N.E.2d 101, 111 (Ill. App. Ct. 2010). As with all negligence claims, "plaintiff must establish the existence of a duty of care owed by the defendant, a breach of that duty, an injury proximately caused by that breach, and damages." *Calles v. Scripto-Tokai Corp.*, 864 N.E.2d 249, 263 (Ill. 2007). While a "manufacturer has a nondelegable duty to design reasonably safe products . . . this duty does not require the product to reflect the safest design possible or be incapable of causing injury." *Salerno*, 932 N.E.2d at 111 (cleaned up).

Despite the longstanding legality and widespread availability of gaming in various forms

(including casinos, sportsbooks, and state lotteries), courts have never applied products liability principles to gaming platforms, whether physical or digital, and courts have uniformly rejected litigants seeking to impose a legal duty to prevent compulsive gaming. *See, e.g., Antar*, 2025 WL 1219316, at *3 (observing that "courts across the country that have considered the issue have uniformly rejected imposing such a duty on casinos" towards compulsive gamblers, and citing cases); *Taveras v. Resorts Int'l Hotel, Inc.*, No. 07–4555 (RMB), 2008 WL 4372791, at *4 (D.N.J. Sept. 19, 2008) ("[T]he great weight of authority supports Defendants' position that common-law tort principles do not require casinos to rescue compulsive gamblers from themselves."); *Merrill v. Trump Indiana, Inc.*, No. 2:99–CV–292, 2002 WL 1307304, at *5 (N.D. Ind. May 9, 2002) (declining to impose a duty on casinos "to evict a known compulsive gambler").

These cases underscore courts' deference to the comprehensive and pervasive regulatory frameworks governing casino operations, and their consistent refusal to impose new common-law duties in the face of such regulation. *See, e.g., Knight v. City of Margate*, 431 A.2d 833, 836 (N.J. 1981) ("[S]tatutory and administrative controls over casino operations . . . are extraordinary[,] pervasive and intensive . . . . [State law regulates] virtually every facet of casino gambling and its potential impact upon the public." (cleaned up)); *Merrill*, 2002 WL 1307304, at *5. The Court should reject Plaintiffs' claims as inconsistent with both precedent and common sense, and dismiss them as a matter of law.

## CONCLUSION

Plaintiffs have now had two opportunities to plead their claims and have fallen short both times. The Court should grant Defendants' motion to dismiss and dismiss each and every cause of action in the FAC without leave to amend.

Dated: June 12, 2025

By: */s/ Clifford W. Berlow*

Andrew W. Vail
Clifford W. Berlow
JENNER AND BLOCK LLP
353 Clark Street
Chicago, IL 60654
Telephone: (312) 222-9350
Email:     avail@jenner.com
           cberlow@jenner.com

Richard R. Patch *(pro hac vice)*
Clifford E. Yin *(pro hac vice)*
Christopher J. Wiener *(pro hac vice)*
Sarah E. Peterson *(pro hac vice)*
COBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000
San Francisco, CA 94104
Telephone: 415-391-4800
Facsimile: 415-989-1663
Email:     ef-rrp@cpdb.com
           ef-cey@cpdb.com
           ef-cjw@cpdb.com
           ef-sep@cpdb.com

*Counsel for Defendants DraftKings Inc.,
Crown IL Gaming LLC, Northside Crown
Gaming LLC, & Casino Queen Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I, Clifford W. Berlow, hereby certify that on June 12, 2025, a true and correct copy of the foregoing Memorandum of Law was filed using the Court's CM/ECF system, which will serve a copy on all counsel of record.

*/s/ Clifford W. Berlow*