IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| James Beyer, Collin Smothers, Mateen Zafer, Corey Davis, and Dashawn Bell individually and on behalf of all others similarly situated,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>DraftKings, Inc.; Crown IL Gaming LLC d/b/a DraftKings, Casino Queen Inc., and Northside Crown Gaming LLC,<br><br>　　　　Defendants. | Case No.: 1:25-cv-01336<br><br>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b)** |

**TABLE OF CONTENTS**

Page(s)

STATEMENT OF ISSUE TO BE DECIDED ...................................................................................1

INTRODUCTION ...........................................................................................................................1

    I.      Whether a Mobile App or Its Features Can Be a "Product" Under Illinois Law Is a "Controlling Question of Law." ....................................................................... 5

    II.     There Are Substantial Grounds for Difference of Opinion About Whether a Mobile App or Its Features Can Be a "Product" Under Illinois Law. ................. 6

    III.    An Immediate Appeal May Materially Advance the Ultimate Termination of the Litigation................................................................................................... 10

    IV.    The Motion Is Timely ............................................................................................ 11

CONCLUSION..............................................................................................................................11

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Ahrenholz v. Bd. of Trs. of Univ. of Illinois*,
   219 F.3d 674 (7th Cir. 2000) ..................................................................................................4, 5

*In re Brand Name Prescription Drugs Antitrust Litig.*,
   878 F. Supp. 1078 (N.D. Ill. 1995) ...............................................................................................6

*In re Brand Name Prescription Drugs Antitrust Litig.*,
   No. 94 C 897, 1998 WL 808992 (N.D. Ill. Nov. 17, 1998).................................................6, 10

*Brookes v. Lyft Inc.*,
   No. 50-2019-CA-004782, 2022 WL 19799628 (Fla. Cir. Ct. Sep. 30, 2022) ..........................9

*Clay v. Union Pac. R.R. Co.*,
   No. 24 CV 4194, 2025 WL 1651529 (N.D. Ill. June 10, 2025)......................................4, 7, 11

*Cothron v. White Castle Sys., Inc.*,
   20 F.4th 1156 (7th Cir. 2021) ......................................................................................................4

*D'Ambrosio v. Rajala*,
   783 F. Supp. 3d 1077 (N.D. Ill. 2025)...............................................................................2, 7, 8

*Dahlstrom v. Sun-Times Media, LLC*,
   39 F. Supp. 3d 998 (N.D. Ill. 2014) .........................................................................................4, 7

*De Leon, et al. v. DraftKings, Inc., et al.*,
   No. 1:25-cv-00644-DLC (S.D.N.Y. Dec. 11, 2025), ECF No. 70........................................2, 8

*E.E.O.C. v. Dial Corp.*,
   No. 99 C 3356, 2001 WL 1945088 (N.D. Ill. Dec. 27, 2001) ......................................5, 6, 7, 10

*Eberhart v. Amazon.com, Inc.*,
   325 F. Supp. 3d 393 (S.D.N.Y. 2018).........................................................................................9

*Jackson v. Airbnb, Inc.*,
   639 F. Supp. 3d 994 (C.D. Cal. 2022) ........................................................................................9

*Jacobs v. Meta Platforms, Inc.*,
   No. 22CV005233, 2023 WL 2655586 (Cal. Super. Ct. Mar. 10, 2023)..................................9

*Jane Doe No. 1 v. Uber Techs., Inc.*,
   79 Cal. App. 5th 410 (Ct. App. 2022).........................................................................................9


*Johnson v. Burken*,
    930 F.2d 1202 (7th Cir. 1991) ...................................................................................5, 10

*Nat. Res. Def. Couns. v. Illinois Power Res., LLC*,
    No. 1:13-CV-01181-JBM-TSH, 2016 WL 9650981 (C.D. Ill. Nov. 2, 2016) ..........................7

*In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*,
    702 F. Supp. 3d 809 (N.D. Cal. 2023) ....................................................................................9

*Sondag v. Pneumo Abex Corp.*,
    2016 IL App (4th) 140918 ......................................................................................................7

*T.V. v. Grindr, LLC*,
    No. 3:22-CV-864-MMH-PDB, 2024 WL 4128796 (M.D. Fla. Aug. 13, 2024) .......................9

*United States v. Moglia*,
    No. 02 C 6131, 2004 WL 1254128 (N.D. Ill. June 7, 2004) ..................................................5

*Whitman v. Bumble Trading LLC*,
    No. 22-CV-2100, 2024 WL 6862251 (C.D. Ill. Feb. 23, 2024) .............................................8

*Ziencik v. Snap, Inc.*,
    No. CV 21-7292-DMG (PDX), 2023 WL 2638314 (C.D. Cal. Feb. 3, 2023) ....................5, 9

**Statutes & Rules**

28 U.S.C. § 1292(b) ................................................................................................ *passim*

Fed. R. Civ. P. 54(b) ...............................................................................................................2

**Other Authorities**

Asaf Lubin, *On Software Bugs and Legal Bugs: Product Liability in the Age of Code*, 100
    Indiana Law Journal 1891 (2025) ..........................................................................................8

Restatement (Second) of Torts § 388 ....................................................................................7

**STATEMENT OF ISSUE TO BE DECIDED**

Whether the Court should certify for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) its November 25, 2025 Memorandum Opinion & Order granting in part and denying in part Defendants' Motion to Dismiss the First Amended Class Action Complaint (ECF No. 51) (the "Order"), given the significance of, and substantial grounds for difference of opinion on, the following controlling question of law: whether a mobile app, or its specific features (e.g., the app interface), can be a "product" for purposes of Illinois product liability law.

**INTRODUCTION**

In the Order, the Court noted that whether a mobile app is a "product" for purposes of tort liability is an unsettled issue "that must be treated thoughtfully, because it is poised to become ever more relevant as our physical and digital lives become further entwined." Order, p. 24. Defendants agree this issue is a critical one requiring additional examination and respectfully ask the Court to certify for interlocutory review its November 25, 2025 Order finding that DraftKings' app interface is a "product." *Id.* at 27.

DraftKings operates DraftKings Sportsbook ("DK Sportsbook"), an online sports betting service. Customers can place bets on DK Sportsbook through a mobile application (the "App") downloaded to their cellphones. There is no controlling precedent regarding whether Illinois product liability law extends to online platforms and apps, and the only other court in this District to address the issue reached the opposite conclusion from this Court's Order. In fact, the vast majority of courts have held that online platforms and apps (and, in one recent instance, DK Sportsbook itself) are services, not physical products, and therefore are *not* subject to products liability. This critically important issue warrants interlocutory appellate review, both to speed resolution of this proceeding and to conserve resources for the parties and this Court.

1

The Court's Order satisfies the requirements of 28 U.S.C. § 1292(b). *First*, the Order involves a controlling question of law. Whether an intangible mobile app, or its individual features, can be considered a "product" is a legal question that turns on the meaning of the common law products liability doctrine. The question is "controlling" because an immediate appeal could dispose of all product liability claims, substantially narrowing this proceeding and reducing the scope of discovery to be taken.

*Second*, there is "substantial ground for difference of opinion" concerning this question. Whether an intangible app can be a "product" (as opposed to a service) presents an important question on which courts across the country have reached a different result than the Order, including a court in this District. *See, e.g.*, *D'Ambrosio v. Rajala*, 783 F. Supp. 3d 1077, 1099 (N.D. Ill. 2025) (finding that Facebook app is a "service platform[]," not a product).[1] Indeed, a court in the Southern District of New York recently held that DK Sportsbook is "an online betting service, which is not a physical product and therefore not generally covered by products liability law." Opinion and Order, *De Leon, et al. v. DraftKings, Inc., et al.*, No. 1:25-cv-00644-DLC, at 21 (S.D.N.Y. Dec. 11, 2025), ECF No. 70 ("*De Leon* Order").

*Third*, certification here is likely to advance the ultimate termination of the litigation by avoiding time-consuming discovery, motion practice, and a potential trial on claims that the Seventh Circuit reasonably could conclude warrant dismissal at the pleading stage.

Finally, this Motion was filed within a reasonable time after the Order was issued.

Defendants respectfully ask the Court to certify its ruling for appeal to the Seventh Circuit.[2]

---

[1] The Court's Order did not discuss or distinguish *D'Ambrosio*.

[2] Alternatively, the Court may exercise its inherent discretion to reconsider any part of its Order. *See* Fed. R. Civ. P. 54(b) ("any order . . . that adjudicates fewer than all the claims . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities").

2

**BACKGROUND**

On May 9, 2025, Plaintiffs filed a First Amended Class Action Complaint containing 12 causes of action, including two strict liability causes of action and two negligent products liability causes of action. Plaintiffs allege that the DK Sportsbook App was defectively designed to addict users, and that Defendants failed to warn users about the purported risk of addiction. Defendants moved to dismiss these claims on several grounds, including that DK Sportsbook is a service, not a "product" subject to product liability law.

On November 25, 2025, this Court issued its Order, granting in part and denying in part Defendants' motion to dismiss. Although the Court agreed with Defendants that "[t]he core functionalities of the DraftKings app—for example, taking wagers and paying out winners—are likely services[,]" it declined to "classify[] the entire app either a product or a service[.]" Order, pp. 25, 28. Instead, the Court focused not on the app as a whole but on "whether the <u>functionalities</u> of defendants' platforms challenged by plaintiffs are products." *Id.* at 25 (quoting *In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 702 F. Supp. 3d 809, 849 (N.D. Cal. 2023)) (emphasis in original). The Court then concluded that "the *interface* of the DraftKings app is a product under Illinois law." Order, p. 27 (emphasis added).

In reaching this conclusion, the Court reasoned that neither the Illinois Supreme Court nor the Second Restatement of Torts, which Illinois has adopted, specifically define "product" for purposes of strict liability. *Id.* at 26. The Court therefore applied the "social policy justifications underlying the adoption of strict liability," concluding that justice favors applying the unique rubric of products liability law, including strict liability, to DraftKings. *Id.* at 27.

The Court also concluded that the DK Sportsbook App *interface* is not a service, even though "[t]he core functionalities of the DraftKings *app*—for example, taking wagers and paying

3

out winners—are likely services." *Id.* at 28 (emphasis added) ("Defendants' point that these services are at the core of their business operations is well taken."). Analyzing the App interface in isolation enabled the Court to conclude that DraftKings provides a "product" even though the "core functionalities" of its App and overall business operations are services.

## LEGAL STANDARD

Pursuant to 28 U.S.C. § 1292(b), a district court may certify an order for interlocutory appeal when such an order "involves a controlling question of law as to which there is substantial ground for difference of opinion and . . . an immediate appeal from the order may materially advance the ultimate termination of the litigation[.]" The Court of Appeals may then, in its discretion, permit an appeal to be taken from such order.

"There are four statutory criteria for the grant of a section 1292(b) petition to guide the district court: there must be a question of *law*, it must be *controlling*, it must be *contestable*, and its resolution must promise to *speed up* the litigation." *Ahrenholz v. Bd. of Trs. of Univ. of Illinois*, 219 F.3d 674, 675 (7th Cir. 2000) (emphasis in original). "[W]hen the statutory criteria are met, the District Court has a duty to allow the appeal." *Dahlstrom v. Sun-Times Media, LLC*, 39 F. Supp. 3d 998, 1001 (N.D. Ill. 2014) (citing *Ahrenholz*, 219 F.3d at 677). The Seventh Circuit also imposes "a [fifth] nonstatutory requirement: the petition must be filed in the district court within a *reasonable time* after the order sought to be appealed." *Ahrenholz*, 219 F.3d at 675–76 (emphasis in original).

District courts routinely certify threshold questions of state law. *See, e.g.*, *Cothron v. White Castle Sys., Inc.*, 20 F.4th 1156, 1160 (7th Cir. 2021); *Clay v. Union Pac. R.R. Co.*, No. 24 CV 4194, 2025 WL 1651529, at *2 (N.D. Ill. June 10, 2025).

4

**ARGUMENT**

I. **Whether a Mobile App or Its Features Can Be a "Product" Under Illinois Law Is a "Controlling Question of Law."**

Whether a mobile app like the DK Sportsbook App (or its specific features) can be a "product" for purposes of Illinois product liability law is a "controlling question of law" under section 1292(b) because it is a pure legal issue that significantly impacts the conduct of this litigation.

A "question of law" is an "abstract legal issue" that can be decided by the court of appeals "quickly and cleanly without having to study the record[.]" *Ahrenholz*, 219 F.3d at 676–77. Whether an intangible mobile app like the DK Sportsbook App can be a "product" turns on the scope of the common law products liability doctrine in Illinois. *See id.* ("the meaning of a . . . common law doctrine" is a "question of law" under section 1292(b)); *see also, e.g., Ziencik v. Snap, Inc.*, No. CV 21-7292-DMG (PDX), 2023 WL 2638314, at *4 (C.D. Cal. Feb. 3, 2023) (granting motion to dismiss products liability claim because Snapchat app is a service, not a product).

A "controlling" issue is one that is "serious to the conduct of the litigation, either practically or legally." *E.E.O.C. v. Dial Corp.*, No. 99 C 3356, 2001 WL 1945088, at *3 (N.D. Ill. Dec. 27, 2001) (quoting *Johnson v. Burken*, 930 F.2d 1202, 1206 (7th Cir. 1991)); *United States v. Moglia*, No. 02 C 6131, 2004 WL 1254128, at *3 (N.D. Ill. June 7, 2004) (observing that a question of law is controlling "if its resolution is quite likely to affect the further course of the litigation, even if not certain to do so.") (citation omitted). This standard is satisfied where the decision on the issue could lead to reversal on appeal, or where interlocutory reversal could "head off protracted, costly litigation" and save time and expense. *Dial Corp.*, 2001 WL 1945088, at *3 (citing *Ahrenholz*, 219 F.3d at 677); *Johnson*, 930 F.2d at 1206 (noting that "a question is controlling, even though its

5

decision might not lead to reversal on appeal, if interlocutory reversal might save time for the district court, and time and expense for the litigants.") (citation omitted).

Whether a mobile app like the DK Sportsbook App, or its specific features, can be a "product" is a controlling issue because an interlocutory reversal would require immediate dismissal of the four products liability claims and substantially narrow this case, saving time and expense for the parties and this Court. For example, the parties would not need to take discovery related to the design of the App and the feasibility of alternative designs. *See Dial Corp.*, 2001 WL 1945088, at *3 (finding that scope of limitations period is a controlling issue because interlocutory reversal would require dismissal of certain claims as time-barred, which would limit the scope of relevant evidence, saving time and expense); *In re Brand Name Prescription Drugs Antitrust Litig.*, No. 94 C 897, 1998 WL 808992, at *5, *6 (N.D. Ill. Nov. 17, 1998) (finding issue controlling where it "may have a significant impact upon the scope of the . . . claims[,]" "the course of the . . . trials[,]" and the evidence the parties are required to present, resulting in "substantial savings of both judicial and party resources") (citation omitted).

## II. There Are Substantial Grounds for Difference of Opinion About Whether a Mobile App or Its Features Can Be a "Product" Under Illinois Law.

To be eligible for certification under section 1292(b), the question of law must be "contestable," *i.e.*, "substantial grounds for a difference of opinion" must exist. There are substantial grounds for difference of opinion as to whether mobile applications can be "products," both because they are intangible and because they are services.

Courts have found an issue contestable where it poses a "difficult central question of law which is not settled by controlling authority" and there is a "substantial likelihood" of reversal on appeal. *In re Brand Name Prescription Drugs Antitrust Litig.*, 878 F. Supp. 1078, 1081 (N.D. Ill. 1995) (citations omitted). Both the novelty of an issue and the existence of conflicting authority

may demonstrate that an issue is contestable. *Nat. Res. Def. Couns. v. Illinois Power Res., LLC*, No. 1:13-CV-01181-JBM-TSH, 2016 WL 9650981, at *4 (C.D. Ill. Nov. 2, 2016).

All elements are present. This Court reasoned in the Order that "a clear consensus on the question of whether an app or software is a 'product' for the purposes of tort liability has yet to emerge[,]" and the issue "must be treated thoughtfully." Order, p. 24; *see Clay*, 2025 WL 1651529, at *3 (noting that decision to certify "does not change the Court's confidence in its earlier decision . . . Rather, it is an acknowledgement of the novelty and complexity of the legal issue.").

The Illinois Supreme Court has adopted Sections 388 and 402A of the Second Restatement "without modification or qualification" for products liability actions. *Sondag v. Pneumo Abex Corp.*, 2016 IL App (4th) 140918, ¶ 26. Section 388, which governs products liability actions premised on negligence, applies to harm resulting from the use of "chattels," *i.e.*, *tangible property*. Restatement (Second) of Torts § 388 (1965). Neither the Illinois Supreme Court nor the Seventh Circuit have addressed whether products liability can extend to an intangible digital app (or its specific features). The only two Illinois district courts to consider the issue reached contrary conclusions. *Compare* Order, pp. 23-29 (finding that DraftKings' DK Sportsbook App interface is a "product") *with D'Ambrosio*, 783 F. Supp. 3d at 1099 (dismissing strict products liability claim alleging defects in the Facebook app and algorithm because the Facebook app is a "service platform[]," not a product).

Courts have held that an issue is contestable under these very circumstances. *See, e.g.*, *Dahlstrom*, 39 F. Supp. 3d at 1002 ("These competing interpretations—both of them defensible and neither of them precluded by binding precedent—evidence substantial grounds for difference of opinion."); *Dial Corp.*, 2001 WL 1945088, at *3 (finding substantial grounds for disagreement about whether limitations period applied where district court order to be appealed from conflicted

7

with express statutory language, and Seventh Circuit had not addressed the issue); *Whitman v. Bumble Trading LLC*, No. 22-CV-2100, 2024 WL 6862251, at *5 (C.D. Ill. Feb. 23, 2024) ("As evidenced in the court's Order discussing the conflicting or distinguishable federal district court case law on this issue, while at the same time trying to predict how the Illinois Supreme Court would rule, there is a substantial ground for difference of opinion because of the absence of authority, under either Illinois or controlling federal case law[.]").

This disagreement is not limited to Illinois. Conflicting decisions reached by courts across the country compel the conclusion that there is room for substantial disagreement about whether mobile apps like the DK Sportsbook App are "products," or are instead services. *See* Asaf Lubin, *On Software Bugs and Legal Bugs: Product Liability in the Age of Code*, 100 Indiana Law Journal 1891, 1904-05 (2025) (observing that "courts remain deeply divided, and the jurisprudence on software, digital technologies, and strict liability reflects this disarray . . . no state high court has definitively ruled on whether software qualifies as a product[]").

The Southern District of New York recently dismissed nearly identical products liability claims against DraftKings, noting that "the application of a products liability theory to DraftKings' online betting tool would be novel[,]" and concluding that DK Sportsbook is "an online betting service, which is not a physical product and therefore not generally covered by products liability law." *De Leon* Order, p. 21.

Most courts have reached the same conclusion as the Southern District of New York in *De Leon* and the Northern District of Illinois in *D'Ambrosio*, finding that apps and online platforms are services not subject to products liability. In *James v. Meow Media, Inc.*, for example, the Sixth Circuit applied Section 402A of the Second Restatement and held that "video games, movie[s], and internet sites" are "not 'products,'" under Kentucky law. 300 F.3d 683, 687, 700-01 (6th Cir.

8

2002); *see also Ziencik v. Snap, Inc.*, No. CV 21-7292-DMG (PDx), 2023 WL 2638314, at *4 (C.D. Cal. Feb. 3, 2023) (Snapchat); *Jackson v. Airbnb, Inc.*, 639 F. Supp. 3d 994, 1011 (C.D. Cal. 2022) (Airbnb); *Eberhart v. Amazon.com, Inc.*, 325 F. Supp. 3d 393, 399 (S.D.N.Y. 2018) (Amazon); *Jacobs v. Meta Platforms, Inc.*, No. 22CV005233, 2023 WL 2655586, at *4 (Cal. Super. Ct. Mar. 10, 2023) (Facebook); *Social Media Cases*, No. 22STCV21355, 2023 WL 6847378, at *15 (Cal. Super. Ct. Oct. 13, 2023) (Facebook, Instagram, Snapchat, TikTok, and YouTube); *Jane Doe No. 1 v. Uber Techs., Inc.*, 79 Cal. App. 5th 410, 419 (Ct. App. 2022) (noting that trial court held "Uber app was not a product"). On the other hand, some courts have held that apps can be products. *See In re Soc. Media*, 702 F. Supp. 3d at 848–54 (certain features of social media apps); *Brookes v. Lyft Inc.*, No. 50-2019-CA-004782, 2022 WL 19799628, at *2 (Fla. Cir. Ct. Sep. 30, 2022) (Lyft); *T.V. v. Grindr, LLC*, No. 3:22-CV-864-MMH-PDB, 2024 WL 4128796, at *21 (M.D. Fla. Aug. 13, 2024) (report and recommendation regarding Grindr).

Interlocutory review of the products liability issue also is warranted because the Court's approach breaks new ground. In analyzing whether DraftKings provides a product, the Court considered the "interface of the DraftKings app" separate from the App as a whole, while acknowledging that "[t]he core functionalities of the DraftKings app—for example, taking wagers and paying out winners—are likely services." Order, pp. 28–29. Defendants are unaware of any Illinois authority framing the question of whether something is a product in this way.[3] Defendants respectfully submit the Seventh Circuit could conclude that the only relevant question is whether

---

[3] The Court's unique approach was inspired by a Northern District of California case that did not apply Illinois law. *Id.* at 25 (citing *In re Soc. Media*, 702 F. Supp. 3d at 849). Rather, the Northern District of California primarily addressed the law of Georgia and New York and applied the "Third Restatement of Torts" (702 F. Supp. 3d at 839–40), which this Court declined to apply (Order, p. 25 n.17). Moreover, the Northern District of California did not cite any prior authority—from Illinois or any other state—applying its functionality-based approach. *See* 702 F. Supp. 3d at 849.

9

a given mobile app platform itself is a product—not whether specific features of that platform, like the app interface, can themselves constitute "products" for product liability purposes.

### III. An Immediate Appeal May Materially Advance the Ultimate Termination of the Litigation.

The last statutory criterion under Section 1292(b) is also met. Interlocutory review would "materially advance the ultimate termination of the litigation," because whether mobile apps like the DK Sportsbook App can be "products" is a threshold question for a significant portion of the claims in this case.[4] *Johnson*, 930 F.2d at 1205.

A Seventh Circuit ruling in Defendants' favor would mean the outright dismissal of Plaintiffs' four product liability claims, which would significantly narrow the scope of the case and the discovery to be taken. It would also increase the prospects for settlement and limit the expenditure of judicial resources. That is enough to "materially advance" the litigation. *Dial Corp.*, 2001 WL 1945088, at *4 & *4 n.4 (holding that dismissal of some claims would advance litigation because "[w]hile the case may continue, it would [] be significantly limited in scope" and "the likelihood of settlement will substantially increase"); *In re Brand Name Prescription Drugs*, 1998 WL 808992, at *6–7 (observing that "section 1292(b) . . . does not require that an issue be outcome determinative" and that dismissal of some claims would advance litigation by limiting evidence presented at trial, resulting in "in a substantial savings of both judicial and party resources").

On the other hand, if Plaintiffs are permitted to continue litigating their case based on a specific feature of the DK Sportsbook App that the Seventh Circuit ultimately holds cannot be subject to product liability law, then the Court and parties will have undertaken massive wasted effort—in the form of fact and expert discovery, summary judgment motions, as well as any trial.

---

[4] "[T]he inquiries under the 'controlling' criterion and the 'materially advance' criterion are similar." *Dial Corp.*, 2001 WL 1945088, at *4 n.5.

## IV. The Motion Is Timely

Finally, this motion is timely. The Court issued the Order on November 25, 2025, and Defendants filed the instant motion on December 23, 2025. Courts in this district routinely hold that a period of one month between issuance of an order and filing the motion for certification is reasonable. *See, e.g.*, *Clay*, 2025 WL 1651529, at *2.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court certify its November 25, 2025 Memorandum Opinion & Order granting in part and denying in part Defendants' Motion to Dismiss the First Amended Class Action Complaint (ECF No. 51) for interlocutory appeal pursuant to 28 U.S.C. § 1292(b), and amend the Order accordingly.

Dated: December 23, 2025

By: *Clifford W. Berlow*
Clifford W. Berlow
JENNER AND BLOCK LLP
353 Clark Street
Chicago, IL 60654
Telephone: (312) 222-9350
Email: cberlow@jenner.com

Richard R. Patch *(admitted pro hac vice)*
Clifford E. Yin *(admitted pro hac vice)*
Christopher J. Wiener *(admitted pro hac vice)*
Sarah E. Peterson *(admitted pro hac vice)*
COBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000
San Francisco, CA 94104
Telephone: 415-391-4800
Facsimile: 415-989-1663
Email: ef-rrp@cpdb.com
ef-cey@cpdb.com
ef-cjw@cpdb.com
ef-sep@cpdb.com

*Counsel for Defendants DraftKings Inc., Crown IL Gaming LLC, & Northside Crown Gaming LLC*

11

## CERTIFICATE OF SERVICE

    I, Clifford W. Berlow, hereby certify that on December 23, 2025, a true and correct copy of the foregoing Memorandum of Law in Support of Defendants' Motion to Certify Order for Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(b) was electronically filed using the Court's CM/ECF system, which will serve a copy on all counsel or record.

                                                                         *Clifford W. Berlow*