IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAMES BEYER, COLLIN SMOTHERS, MATEEN ZAFER, COREY DAVIS, and DASHAWAN BELL, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>DRAFTKINGS, INC., and CROWN IL GAMING INC. d/b/a DRAFTKINGS, CASINO QUEEN INC., and NORTHSIDE CROWN GAMING LLC,<br><br>Defendants. | No. 25 C 1336<br><br>Judge Robert W. Gettleman |

**MEMORANDUM OPINION & ORDER**

This court granted in part and denied in part defendants' motion to dismiss in a memorandum opinion and order issued on November 25, 2026 (Doc. 51). Defendants now move to certify that order for interlocutory appeal under 28 U.S.C. § 1292(b). Plaintiffs oppose this motion. For the reasons below, the motion to certify the order for interlocutory appeal (Doc. 54) is denied.

The court presumes familiarity with the relevant factual background of the case, which is detailed in the court's November 25, 2026, opinion. See Beyer v. DraftKings, Inc., No. 25 C 1336, 2025 WL 3281680 (N.D. Ill. Nov. 25, 2025). Defendants move to certify the following question of law for interlocutory appeal: "whether a mobile app, or its specific features (e.g., the app interface), can be a 'product' for purposes of Illinois product liability law."

When an order is not otherwise appealable, 28 U.S.C. § 1292(b) permits the court to

1

certify an interlocutory appeal from the order if it "involves a controlling question of law as to which there is substantial ground for difference of opinion" and "an immediate appeal from the order may materially advance the ultimate termination of the litigation."  The Seventh Circuit has held that there are "four statutory criteria for the grant of a section 1292(b) petition to guide the district court: there must be a question of *law*, it must be *controlling*, it must be *contestable*, and its resolution must promise to *speed up* the litigation."  Ahrenholz v. Bd. of Trs. of Univ. of Illinois, 219 F.3d 674, 675 (7th Cir. 2000).  If all four criteria are not satisfied, then "the district court may not and should not certify its order to us for an immediate appeal under section 1292(b)."  Id. at 676.

The court begins by analyzing the last factor, whether resolution of the proposed question promises to speed up the litigation.  According to defendants, a resolution to the proposed question could "require immediate dismissal of the four products liability claims and substantially narrow this case, saving time and expense for the parties and this Court.  For example, the parties would not need to take discovery related to the design of the App and the feasibility of alternative designs."  Plaintiffs respond that interlocutory appeal will severely delay this litigation because the Seventh Circuit is likely to again certify the same question to the Supreme Court of Illinois.

The court finds that interlocutory appeal does not promise to speed up the litigation.  In addition to the likelihood of multiple layers of review, interlocutory appeal would fail to speed up the litigation for a more important reason: the question presented by defendants for appeal would resolve only two of the four products liability claims.  The products liability claims are

2

contained in Counts Nine through Twelve of the complaint.[1]  They are listed below:

- Count Nine: Strict liability for design defect
- Count Ten: Strict liability for failure to warn
- Count Eleven: Negligence for design defect
- Count Twelve: Negligence for failure to warn

The proposed question for certification—whether a mobile app, or its specific features (e.g., the app interface), can be a "product" for purposes of Illinois product liability law—is relevant only to the strict liability claims in Counts Nine and Ten.[2]  The Supreme Court of Illinois has held that, "[u]nder Illinois law, the elements of a claim of strict liability based on a defect in the product are: (1) a condition of the product as a result of manufacturing or design, (2) that made the product unreasonably dangerous, (3) and that existed at the time the product left the defendant's control, and (4) an injury to the plaintiff, (5) that was proximately caused by the condition."  Mikolajczyk v. Ford Motor Co., 901 N.E.2d 329, 345 (Ill. 2008), as modified on denial of reh'g (Dec. 18, 2008).  As is made clear by its elements, a strict liability design defect claim requires a "product."  See also Trent v. Brasch Mfg. Co., 477 N.E.2d 1312, 1314–15 (Ill. App. 1st 1985) (explaining that "the Illinois Supreme Court has not defined specifically a 'product' for purposes of strict liability in tort" (emphasis added)).

Similarly, a strict liability failure to warn claim also requires a "product."  The Supreme Court of Illinois has explained that "[a] product may be unreasonably dangerous in one of two

---

[1] The complaint refers to "causes of action," which the court refers to as "counts."
[2] Defendants have indicated awareness that the proposed question is relevant only to the strict liability claims.  Their motion to dismiss briefing originally raising this argument featured the subheading "Plaintiffs' Strict Liability Claims Fail Because Unfixed And Changeable Digital Services Like DraftKings' Platform Are Not Products."  Defendants did not seek to dismiss the negligence claims based on the same argument.

3

ways: because of (1) a design or manufacturing defect or (2) a failure to warn of a danger posed by the product of which the average consumer would not be aware." Lamkin v. Towner, 563 N.E.2d 449, 457 (Ill. 1990). Thus, under Illinois law, a strict liability failure to warn claim consists of the same elements as a strict liability design defect claim, including the requirement of a "product." The difference between the two claims lies in how the plaintiff intends to establish the product was unreasonably dangerous.

In contrast, the negligence theories do not rely on the existence of a "product." A negligence-based products liability claim is just an ordinary negligence claim based on a fact-set that happens to include a product. See Jablonski v. Ford Motor Co., 955 N.E.2d 1138, 1153–54 (Ill. 2021) (holding that "[a] product liability action asserting a claim based on negligence, such as negligent design, is based upon fundamental concepts of common law negligence. As in any negligence action, a plaintiff must establish the existence of a duty, a breach of that duty, an injury that was proximately caused by that breach, and damages") (internal citations omitted)).

An ordinary negligence claim does not, of course, turn on the classification of anything as a "product." To make this point clear from a different angle, consider that negligence claims routinely apply to services, such as medical and legal malpractice. The answer to defendants' proposed question for certification is irrelevant to the resolution of plaintiffs' negligence claims, because these claims do not turn on classifying the app as a "product." See Blue v. Env't Eng'g, Inc., 828 N.E.2d 1128, 1141 (2005) (explaining that"[i]n a negligence defective design case, the focus is on the conduct of the defendant, but in a strict liability defective design case, the focus is on the product").

Returning to whether resolving the proposed question for certification promises to speed

4

up litigation, the time-savings proposed by defendants seem to have evaporated. Plaintiffs would still "seek the full range of discovery" that defendants argue could be avoided by resolving the proposed question for certification. Consequently, the court finds that certification for interlocutory appeal does not promise to speed up the litigation.

Because "the district court may not and should not certify its order to us for an immediate appeal under section 1292(b)" unless all the statutory criteria are met, the court need not proceed any further in its analysis. Ahrenholz, 219 F.3d at 676. The court has already determined that interlocutory appeal does not promise to speed up the litigation. Thus, all the statutory criteria in § 1292(b) are not met. Consequently, the motion to certify the order for interlocutory appeal (Doc. 54) is denied.

## CONCLUSION

For the above reasons, the motion to certify the order for interlocutory appeal (Doc. 54) is denied. Defendants are directed to answer the first amended complaint by March 18, 2026. The parties are ordered to submit a joint status report using this court's form by March 25, 2026.

**ENTER:**

_____
**Robert W. Gettleman**
**United States District Judge**

**DATE:  February 26, 2026**